UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC FARLEY and DAVE RINALDI, individually and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DOLGEN CALIFORNIA LLC, and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:16-cv-02501-KJM-EFB<br><br>ORDER |

This putative class action attacks a retail corporation's policy and practice of preventing "key carrier" employees from taking true rest and meal breaks because they are constantly on call. Plaintiffs Eric Farley and Dave Rinaldi originally sued defendant Dolgen California, LLC (Dolgen) in state court for labor and employment law violations before Dolgen removed the case to this court. Not. Removal ¶ 1, ECF No. 1. Plaintiffs now move to remand to San Joaquin County Superior Court. Mot., ECF No. 10. Defendant opposes the motion, and plaintiffs have replied. Opp'n, ECF No. 13; Reply, ECF No. 15. The court submitted the matter without a hearing on December 12, 2016. ECF No. 16. As explained below, the court GRANTS plaintiffs' motion to remand.

/////

1

# I. BACKGROUND

The putative class includes defendant's current or former "non-exempt" retail employees who were unable to take proper rest or meal breaks because they were the only employees on duty with "key carrier" responsibility. First Am. Compl. ¶ 16, Ex. B, ECF No. 1 at 37 (FAC). Plaintiffs filed this class action in San Joaquin County Superior Court on July 8, 2016. Compl., Ex. A, ECF No. 1 at 19. They filed the operative first amended complaint on September 15, 2016, alleging: (1) Meal period and rest break violations; (2) waiting time penalties under Labor Code § 203; (3) wage statement penalties under Labor Code § 226; (4) unfair business practices under California Business and Professions Code § 17200; and (5) violations of the Private Attorneys General Act of 2004, Labor Code § 2699 (PAGA). FAC ¶¶ 32–65. On October 19, 2016, defendant removed the case to federal court, asserting jurisdiction under the Class Action Fairness Act (CAFA), 12 U.S.C. § 1453. Not. Removal. Plaintiffs now move to remand, challenging defendant's ability to meet CAFA's amount-in-controversy requirement. Mot. at 11.

# II. LEGAL STANDARD: CAFA JURISDICTION

A defendant may remove to a federal district court "any civil action brought in a state court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if (1) the class has more than 100 members, (2) any member of the class is diverse from the defendant, and (3) the amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2), (d)(5)(B).

## A. CAFA Generally

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and wanted courts to interpret CAFA "expansively." *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citation omitted). Although courts generally "strictly construe the removal statute against removal jurisdiction" and apply a "strong presumption against removal," *Gaus v. Miles, Inc.*, 980 F.3d 564, 566 (9th Cir. 1992), "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v.*

2

*Owens*, 135 S. Ct. 547, 554 (2014) (citing S. Rep. No. 109–14, p. 43 (2005) "[CAFA's] provisions should be read broadly with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."). Nonetheless, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court. 28 U.S.C. § 1447(c).

### B. Burdens of Proof; CAFA Amount-in-Controversy Disputes

A defendant's burden of proof as to the amount in controversy for removal purposes is lenient. "[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). But the notice of removal "need not contain evidentiary submissions": A defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" suffices. *Dart Cherokee*, 135 S. Ct. at 551, 554.

In contrast, when "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Id.* at 554. The parties may submit evidence outside the complaint including affidavits or declarations or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citation omitted). When the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable, and not constitute mere speculation and conjecture. *Ibarra*, 775 F.3d at 1197, 1199. "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. Then "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 135 S. Ct. at 554 (internal citation and quotation marks omitted). If "the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

/////

III.   DISCUSSION

Plaintiff moves to remand based exclusively on the amount in controversy under CAFA. To determine if the amount in controversy exceeds $5 million, courts first look to the complaint. *Ibarra*, 775 F.3d at 1197. Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (internal footnote omitted). Here, plaintiffs brought an "unlimited civil case," and asserted "the claims of individual class members, including each plaintiff, are under the $75,000.00 jurisdictional threshold for federal court." FAC at 1. Relying on the complaint and the declarations of Kellie Collier and Leslie Cheesman,[1] defendant's notice of removal evaluated the alleged meal and rest break violations, wage statement penalties, waiting-time penalties, and potential attorneys' fees to make its showing that the aggregated amount in controversy exceeds $5 million. Not. Removal. Specifically, defendant estimated an amount in controversy of $6,726,231.00, discussed further below. *Id.* at 14.

In their remand motion, plaintiffs do not provide rebuttal evidence. Rather, they challenge defendant's calculations and argue defendant did not meet its burden because it relied on "unsupported assumptions." *See* Mot. at 3–9. Defendant contends plaintiffs' motion to remand must fail because plaintiffs did not submit required evidence or offer an alternative basis for calculating the amount in controversy. Because plaintiffs challenge defendant's estimate, defendant bears the burden to establish jurisdiction by a preponderance of the evidence. *Dart Cherokee*, 135 S. Ct. at 553–54; *see also Ibarra*, 775 F.3d at 1197 (emphasizing "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the amount in controversy exceeds $5 million") (citation omitted). Accordingly, defendant must provide more than a plausible statement to show it satisfies the jurisdictional prerequisite, and the absence of plaintiffs' rebuttal evidence does not change that requirement.

/////

---

[1] Leslie Cheesman works for Dollar General Corporation as a Workforce Reporting Analyst. Cheesman Decl. ¶ 1, ECF No. 1-4. Kellie Collier also works for Dollar General Corporation, as Senior Director of Business Law. Collier Decl. ¶ 1, ECF No. 1-3.

4

1    Defendant does not submit new evidence or new calculations in its opposition
2 brief, but instead rehashes the assumptions, evidence and reasoning it relied on for removal. The
3 question thus is whether defendant's initial calculations show, by a preponderance of the
4 evidence, an amount in controversy of $5 million or more.

A. <u>Meal and Rest Break Violations (Claim 1)</u>

Plaintiffs allege defendant violated the California Labor Code's meal and rest period standards. Defendant calculated a total amount in controversy for this claim to be $1,838,845.80. Not. Removal at 10. To reach that number, defendant fashioned an equation from the complaint and certain statements from Cheesman's declaration, attached to the removal notice. *See id.* (citing Cheesman Decl. ¶ 2, ECF No. 1-4, and FAC ¶ 16). Defendant multiplied 1,683 (half of the members in the putative class) by 45 (total work weeks within the period at issue) by 2 (assumption that each member suffered one meal violation and one rest period violation per week) by $12.14 (average hourly rate).[2] *Id.*

This calculation, paired with the accompanying explanation and declarations, sufficed under the low burden of proof at the time of removal. *See Dart Cherokee*, 135 S. Ct. at 551, 554 (defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" is enough; notice of removal "need not contain evidentiary submissions."). For removal purposes, defendant needed to provide only a "short and plain" statement, and it did that. *Id.* at 553 ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.") (internal citations omitted).

Once plaintiffs challenged this calculation in their remand motion, however; defendant needed to do more, given the nature of its initial showing. Defendant's calculation assumed an average hourly rate of $12.14, yet it is unclear how defendant arrived at that average. Although Cheesman's declaration avers this is the average salary of the 3,366 retail employees in California that fit the First Amended Complaint's non-exempt "key carriers" definition, she does

---

[2] 1,683 x 45 x 2 x $12.14 = $1,838,845.80.

5

not provide the individual salaries that inform this average. Cheesman Decl. ¶ 4. The calculation also assumes, in the face of the complaint's silence, that half of the class incurred at least two violations per week. Defendant claims this violation rate is reasonable in light of plaintiffs' allegation of a "uniform[] corporate policy, practice and/or custom" that "routinely" interrupted meal and rest periods because class members were, as a matter of policy and practice, the sole key carrier on duty and thus prevented from taking compliant meal and rest periods. Opp'n (quoting FAC, ¶¶ 19 20, 30, 37). Defendant has neither fully supported its estimate nor sufficiently explained its reasonableness.

Without corroborating documents, Cheesman's declaration, on which defendant heavily relies, is speculative and self-serving. *See Carag v. Barnes & Noble, Inc.*, No. 2:15-cv-00115, 2015 WL 3706497, at *2, 5 (E.D. Cal. June 11, 2015); *Carag v. Barnes & Noble, Inc.*, No. 2:14-cv-00481, 2014 WL 2446366, at *3 (E.D. Cal. May 30, 2014). Defendant has not met its burden. The court therefore does not consider the $1,838,845.80 estimate in assessing the amount in controversy.

B. Waiting Time Penalties (Claim 2)

Plaintiffs also allege waiting time penalties under Labor Code § 203. At the time of removal, defendant calculated the total amount in controversy for these violations to be $1,956,564.00. To get there, defendant again relied on the First Amended Complaint to create the following equation: 1,042.5 (half of the number of terminated employees) x 8 (hours in a work day) x 20 (assumed number of days violations occurred) x $11.73 (average hourly rate) for a total of $ 1,956,564.00.[3] Not. Removal at 11.

This estimate sufficed for removal. *See Dart Cherokee*, 135 S. Ct. at 551. However, defendant has not met its heightened burden to rebut plaintiffs' challenge to this calculation. Defendant again provides no meaningful insight into how Cheesman extrapolated average wage rates. Defendant also makes unsupported assumptions based on plaintiffs' complaint. Defendant contends the complaint's unlimited language "entitled [defendant] to

---

[3] 1,042.5 x 8 x 20 x 11.73 = $ 1,956,564.00.

6

assume that plaintiffs intended to include all putative members in the putative class, and that plaintiffs would seek to recover all of the waiting time penalties for each . . . class member." Opp'n at 17 (citing Not. Removal at 11). The complaint itself states "Defendants willfully failed to pay [p]laintiffs and other members of the Class who are no longer employed by Defendants for their missed, untimely and/or on-duty or interrupted meal periods . . . upon termination or separation from employment with Defendants as required by California Labor Code §§ 201 and 202." FAC ¶ 41. Defendant's calculation assumes half of the terminated employees will seek two-thirds of the available recovery. Defendant has not supported this calculation by a preponderance of the evidence. Accordingly, the court will not consider defendant's $1,956,564.00 estimate as part of the amount in controversy.

### C. Inaccurate Wage Statements (Claim 3) and Attorneys' Fees

Plaintiffs also attack defendant's estimated amount in controversy for inaccurate wage statements and attorneys' fees. For the allegedly inaccurate wage statements in violation of Labor Code § 226, defendant estimated $1,585,575.00 in controversy at the time of removal. Not. Removal at 12. To get there, defendant estimated half of the putative class received inaccurate wage statements. *Id*. Defendant also referenced the $50 statutory fee for an initial wage time penalty and $100 fee for all subsequent violations. *Id.* Defendant multiplied 1,093.5 (half of putative class) by 50 (initial penalty), and then added that number to a separate calculation of 1,093.5 (half of putative class) by $100 (subsequent penalty) by 14 (pay periods after initial violation), for a total of $1,585,575.00.[4] *Id.* at 13. Defendant then combined the three award estimates for meal and rest time violations, overtime violations and inaccurate wage statements, to form the baseline for its attorneys' fees calculation. *Id.* at 13–14. Applying the Ninth Circuit's twenty-five percent benchmark recovery rate to that baseline, defendant estimated $1,345,246.20 in attorneys' fees.[5]

/////

---

[4] (1,093.5 x 50) + (1,093.5 x 100 x 14) = $1,585,575.00.

[5] (1,838,845.80 + 1,956,564 + 1,585,575) x 25% = $1,345,246.20.

7

The wage statement violation calculation sufficed for removal for the same reasons as did defendant's calculations for overtime wages and meal and rest violations. *See Dart Cherokee*, 135 S. Ct. at 551 ("short and plain" statement). The attorneys' fees estimate also sufficed because when an underlying statute authorizes attorneys' fees, those "fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). PAGA authorizes attorneys' fees,[6] and plaintiffs assert a PAGA claim.

The court need not, however, inquire into how these two calculations fare in opposition to plaintiff's remand motion. The court has rejected defendant's meal and rest violation and overtime violation calculations as unsupported, and defendant's attorneys' fees estimate derives from that unsupported foundation. The court will not consider defendant's $1,345,246.20 attorneys' fees estimate in assessing amount in controversy.

Without defendant's three estimates—meal and rest break calculation of $1,838,845.80, overtime calculation of $1,956,564.00, and attorneys' fee calculation of $1,345,246.20—the total amount in controversy does not exceed $5 million.

IV. CONCLUSION

Although defendant's notice of removal adequately stated an amount in controversy beyond $5 million, when plaintiffs challenged that calculation, defendant faced a heightened burden to support its calculation by a preponderance of evidence. Defendant has not met that burden. The court GRANTS plaintiffs' motion to remand to San Joaquin County Superior Court.

This order resolves ECF No. 3. The court denies defendant's pending motion to compel arbitration as moot. ECF No. 6. CASE CLOSED.

IT IS SO ORDERED.

DATED: August 8, 2017.

UNITED STATES DISTRICT JUDGE

---

[6] "Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Lab. Code § 2699(g).